IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | ) | |
|     Joe Hand, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION: 1:21-00281-KD-B |
| | ) | |
| ANTHONY JACKSON, d/b/a HALF TIME | ) | |
| SPORTS BAR AND GRILL, | ) | |
|     Defendant. | ) | |

**ORDER**

This matter is before the Court on Joe Hand's motion for entry of a default judgment against

Defendant Anthony Jackson (Docs. 17, 18), the Court's May 12, 2022 Order (Doc. 19), and Joe Hand's

Response (Doc. 21).

I.    **Background**

On June 22, 2021, Joe Hand Promotions, Inc. (Joe Hand)[1] initiated this action in this Court

pursuant to the *Communications Act of 1934*, as amended, 47 U.S.C. § 553 and 47 U.S.C. § 605, against

individual Defendant "Anthony Jackson d/b/a Half Time Sports Bar and Grill" (Jackson).[2]  (Doc. 1 at

1). Joe Hand's case is rooted in a Commercial Licensing Agreement (the contract) executed with an

event promoter PBC ON PPV, LLC (PBC, a non-party) for the exclusive rights to exhibit/show the

boxing match *Manny Pacquiao vs. Keith Thurman* (the event or program) on July 20, 2019, including

all undercard bouts and commentary. (Doc. 17-1 at 2; Doc. 17-8).  As exclusive licensee, Joe Hand has

---

1 Joe Hand is a corporation organized under the laws of Pennsylvania with its principal place of business
in Feasterville, PA.  (Doc. 1 at 1).  Joe Hand is a distributor and licenser of sports and entertainment
programming to commercial establishments (*e.g.*, bars, restaurants, nightclubs, lounges, etc.). (Id. at 2).

2 Jackson is alleged to be a resident of the State of Alabama. (Doc. 1 at 1).  Joe Hand alleges that the
establishment Half Time Sports Bar and Grill located in Mobile, Alabama is operated by Jackson and that
Jackson conducts business as the establishment.  (Id.)

the right to assert independent claims (including under the Communications/Copyright Acts) against commercial infringers that receive and exhibit the event without authorization, in accordance with Paragraph 8 of the contract:

> 8.   **Security.** Upon written demand, JHP shall provide PBC with a complete list of licensed locations. JHP shall use reasonable best efforts to discourage theft of service and the unauthorized exhibition of the Events at commercial locations. In an effort to protect the commercial closed-circuit broadcast rights, JHP will coordinate and finance its own anti-piracy program. JHP shall have the right as exclusive licensee to assert independent claims including under the Communications and/or Copyright Acts, against commercial infringers that receive and exhibit the Events without authorization. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. PBC agrees that as exclusive commercial Licensee, JHP may assert claims and file lawsuits in its own name under the Communications and Copyright Acts against unauthorized non-residential/commercial establishments that obtain the Events through cable, satellite, or internet. Notwithstanding the foregoing, JHP shall obtain PBC's express written consent prior to asserting any such claims or filing any such lawsuits.

(Doc. 17-8 at 3).[3]  Additionally, Paragraph 28 of the contract -- "Governing Law; Forum Selection; Consent to Jurisdiction" -- provides as follows:

> 28.   **Governing Law; Forum Selection; Consent to Jurisdiction.** This Agreement and its incorporated Exhibits, if any, have been delivered at and shall be deemed to have been made and entered into by each Party at its principal place of business. Accordingly, the rights and liabilities of the Parties shall be determined in accordance with the laws of the State or Commonwealth of its formation, without regard to its principles of conflicts of laws. The Parties agree that the exclusive jurisdiction and venue for the resolution of any dispute arising from or relating to this Agreement shall lie: (a) in the United States District Court, District of California, sitting in Los Angeles, California if PBC commences a lawsuit, and (b) in the United States District Court, Eastern District of Pennsylvania, sitting in Philadelphia, PA if JHP commences a lawsuit. Each Party irrevocably consents to the service of process in any such dispute if served in accordance with the notice provisions contained herein.

(Doc. 17-8 at 3 at ¶¶8, 28).

In this case, Joe Hand alleges that Jackson committed satellite or cable piracy in violation of 47 U.S.C. § 605 and/or § 553 because he knowingly and willingly wrongfully exhibited and pirated the program to patrons at the Half Time Sports Bar and Grill commercial establishment at 260 Azalea Rd., Mobile, AL, without paying Joe Hand a sublicense fee.  (Doc. 1).  Joe Hand alleges that Jackson

---

3 Joe Hand provides no explanation as to why one sentence of this paragraph is redacted in the Court's copy of the Contract and thus, there is no way to assess the relevance or impact of same.

"pirated" the broadcast "with the purpose and intent to secure a commercial advantage and private

financial gain." (Id. at 3). In the Complaint, Joe Hand alleges as follows:

> Upon information and belief ... Defendant ANTHONY JACKSON:
>
> a. conducted business as Half Time Sports Bar and Grill;
> b. operated, maintained and controlled the establishment known as Half Time Sports Bar and Grill located at 260 Azalea Road, Mobile, AL 36609...
> c. had a right and ability to supervise the activities of the Establishment; and
> d. had an obvious and direct financial interest in the activities of the Establishment.
>                                         ***
> .... Defendant chose not to contract with Plaintiff or pay a fee to Plaintiff to obtain the proper license or authorization. At no time did Plaintiff give Defendant license, permission or authority to receive and exhibit the Program in the Establishment.
>
> ... By unauthorized satellite transmission or, alternatively, by unauthorized receipt over a cable system, Defendant willfully intercepted or received the interstate communications of the Program or assisted in such actions. Defendant then unlawfully transmitted, divulged and published said communications, or assisted in unlawfully transmitting, divulging and publishing said communications to patrons in the Establishment.
>
> ... Without authorization, license, or permission to do so from Plaintiff, Defendant exhibited the Program to the patrons within the Establishment.
>
> ... Defendant pirated Plaintiff's licensed exhibition of the Program and infringed upon Plaintiff's exclusive rights while avoiding proper authorization and payment to Plaintiff. Defendant's actions were committed willfully and with the purpose and intent to secure a commercial advantage and private financial gain.
>
> ... At the time ... Defendant's agents, servants and employees were in fact Defendant's agents, servants and employees, and acting within the scope of their employment and authority as Defendant's agents, servants and employees.

(Doc. 1 at 1-4).

On June 30, 2021, a summons issued to Jackson at "2513 Oakmont Court" -- no city and no

state were listed. (Doc. 6). On August 6, 2021, Joe Hand filed a Service Notice indicating that service

of the summons and complaint had been attempted by USPS certified mail on June 23, 2021, that

counsel had periodically checked the tracking status but as of June 27, 2021, the mail was "in transit,

arriving late[,]" and there was no additional information regarding its delivery status. On August 27,

2021, an Alias Summons issued to Jackson at "2513 Oakmont Court" -- again, no city and no state were listed.[4]  (Doc. 10).  On September 16, 2021, Joe Hand filed a copy of a Summons indicated it was returned "executed" as to Jackson on September 14, 2021.  (Doc. 12).  The Summons' Proof of Service indicates that service was accomplished on another individual, Michael Jackson, with the handwritten notation "defendant's brother," as "a person of suitable age and discretion who resides there" -- at Jackson's "residence of usual place of abode of Jackson."  (Doc. 12 at 1).  The Court is satisfied that this constitutes service on Anthony Jackson.

On October 14, 2021, Joe Hand filed a motion for entry of default against Jackson with the Affidavit of F. Page Gamble, Esq., asserting he had failed to timely appear or respond to the September 14, 2021 service of the Complaint and Summons.  (Docs. 14, 14-1 (Aff. Gamble)).  On October 15, 2021, the Clerk entered a default against Jackson.  (Doc. 15).

On February 8, 2022, Joe Hand filed a Fed.R.Civ.P. Rule 55(b)(2) motion for entry of default judgment against Jackson "and d/b/a Half Time Sports Bar & Grill," asserting a failure to answer or appear, and because a Default had already been entered against Jackson.  (Doc. 17 at 1-2).  (See also Docs. 17-18). In support, Joe Hand submitted the Declaration of attorney F. Page Gamble (Doc. 17-2 (Decltn. Gamble)), screenshots of Facebook postings (Docs. 17-3 to 17-4), the Affidavit of Joe Hand, Jr. (Doc. 17-5 (Aff. Hand)), the event rate card (Doc. 17-6), the Piracy Affidavit of auditor Charles Molyneux (Doc. 17-7 (Aff. Molyneux)), and the contract (Doc. 17-8).  In the motion, Joe Hand argues:

> ... [Jackson] is the owner and/or operator of Half Time Sports Bar & Grill, a commercial establishment ... On July 20, 2019, without authorization ... [Jackson] or agents, servants and/or employees of ... [Jackson], intercepted and received or assisted in the interception and receipt of the transmission of the Event. They ... broadcasted or assisted in the broadcast of the Event to the patrons of the Establishment ...
> ***
> ... Jackson] unlawfully intercepted and exhibited the Event on July 20, 2019 ...

---

4 A review of the Complaint indicates that Joe Hand listed Jackson's certified mail address as 2513 Oakmont Court, Mobile, AL, 36605.  (Doc. 1 at 5).

*** 

In the State of Alabama, the Event was legally available to the public only through very limited means. A commercial establishment, such as a bar, restaurant or lounge, could receive and broadcast the Event only after entering into a contractual agreement with ... [Joe Hand]...

The interstate satellite transmission of the Event was electronically coded or scrambled and was not intended for the use of the general public. If a commercial establishment was authorized by ... [Joe Hand] to receive the Event, it was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal. The authorized commercial establishments which contracted with ... [Joe Hand] were required to pay to ... [Joe Hand] a sublicense fee.

... through untoward methods, requiring an affirmative, deliberative and willful act, commercial establishments that would otherwise be required to purchase the programming from ... [Joe Hand], illegally obtain said programming without paying ... [Joe Hand] ....

... on the evening of the Event...

...auditor Charles H. Molyneaux III, visited the Establishment and observed the Event being broadcasted to the patrons of the Establishment. ... Mr. Molyneaux paid a $10.00 cover charge and noted that the Establishment had an approximate capacity of one hundred ten (110) people with seventy-five (75) patrons present watching the Event. ... the Event was broadcasted on thirteen (13) televisions. ... As ... [Joe Hand] maintained proprietary rights in the signal of the Event, all unlawful acts of interception, receipt and broadcast of the signal by ... [Jackson] was in violation of .... [Joe Hand's] rights and caused ... [Joe Hand] to suffer damages.

*** 

As Half Time Sports Bar and Grill is a commercial establishment, it could not have obtained the transmission of the Event had ... [Jackson] not undertaken specific wrongful actions to intercept and/or receive and broadcast the Event ... there must be some wrongful action such as using an unauthorized decoder, obtaining cable service and illegally altering the cable service to bring the signal of the Event into the commercial establishment or moving an unauthorized decoder from it authorized location to the commercial establishment.

*** 

... [Jackson], or their agents, servants and/or employees intercepted and received or assisted in the interception and receipt of the live telecast of the Event to patrons at the Establishment for viewing therein. The unauthorized exhibition at the Establishment was advertised on the Establishment's official Facebook page. ... The patrons at the Establishment paid for meals, drinks and/or entertainment while viewing the Event. The patrons whom ... [Jackson] permitted without authorization to view the Event would otherwise only have been able to view the Event at a commercial establishment authorized by ... [Joe Hand] to receive the transmission. ... [Jackson] broadcasted the Event to the patrons at the Establishment without

5

paying any sublicense fees to ... [Joe Hand]...no amount has been paid to ... [Joe Hand] to compensate it for the illegal broadcast of the Event in the Establishment and there has been no attempt by ... [Jackson] to reach a settlement ...

(Doc. 17-1 at 2-6).

For same, Joe Hand sought to recover (as set forth in its Proposed Order): 1) statutory damages for violations of 47 U.S.C. § 605(a) per 47 U.S.C. § 605(e)(3)(C)(i)(II)[5] from Jackson in the amount of $6,374.25; 2) enhanced damages for a willful violations of 47 U.S.C. § 605(a) per 47 U.S.C. § 605(e)(3)(C)(ii)[6] from Jackson in the amount of $19,122.75; 3) per 47 U.S.C. § 605(e)(3)(B)(iii)[7] attorneys' fees in the amount of $1,500.00 and costs in the amount of $502.00; 4) in the event Jackson fails to voluntarily pay the judgment, reasonable attorneys' fees for post-trial and appellate services; and 5) court costs and post-judgment interest on the amounts awarded at the statutory rate from the date of Judgment until paid. (Doc. 18 at 2).

The undersigned's review of Joe Hand's motion for default judgment raised questions. On April 12, 2022, this Court ordered Joe Hand to provide an explanation of how the exclusive jurisdiction and venue contractual terms impact this case and the motion. (Doc. 19). The Court also ordered Joe Hand to provide case law in support (and/or statutory reference) of its request for

---

5 **"(II)** the party aggrieved may recover an award of statutory damages for each violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just."

6 "**(ii)** In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a)."

7 "The court -- ... **(iii)** shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."

an award of post-default judgment court costs, "post-trial and appellate services," and/or interest "until such is paid." (Id.)  On May 12, 2022, Joe Hand filed a Response.  (Doc. 21).

In response to the Court's Order, Joe Hand argues that Paragraph 28 is inapplicable because Jackson is not a party to the contract and the paragraph is limited to disputes/lawsuits *between PBC and Joe Hand*: "Section 28 ... repeatedly refers to the "Party" or "Parties", meaning PBC ... and Joe Hand ... only, and the forum selection thus is limited to disputes between the Parties arising from or relating to the Agreement."  (Doc. 21 at 2).  Additionally, Joe Hand states that it was required to file suit in the Southern District of Alabama under 28 U.S.C. § 1391(b) (where the events or omissions giving rise to the claim occurred) because Jackson resided in Mobile, Alabama at the time of the infringing event and the event occurred in Mobile, Alabama.  Moreover, Joe Hand -- in response to the Court's request that it provide support for its request for an award of post-default judgment court costs, "post-trial and appellate services," and/or interest "until such is paid" -- references 28 U.S.C. § 1961(a) to assert that "[s]hould Joe Hand recover a judgment in this matter, it shall be entitled to interest "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."  (Doc. 21 at 2-3). Joe Hand then cites two (2) cases concerned with post-judgment collection, to state that "the Court may also find Joe Hand is entitled to and/or retain jurisdiction over post-judgment court costs and post-trial collection services."  (Id. at 3). In light of same, the Court finds as follows.

Joe Hand initiated this litigation against Jackson, a third-party, for allegedly infringing on its contractual rights to the program under the contract.  Specifically: "Joe Hand ... filed its Complaint ... complaining of ... unauthorized and illegal receipt and exhibition of the *Manny*

*Pacquiao vs. Keith Thurman* broadcast on July 20, 2019 ... at Half Time Sports Bar and Grill ... a commercial business, without paying the sublicense fee to Joe Hand[,]" and so "Joe Hand... is an aggrieved party under Title 47 U.S.C. §§ 553 and 605 because it had a proprietary interest in the intercepted communications (i.e. the Event). Sections 553 and 605 protect companies such as ... [Joe Hand] against the theft of proprietary communications like the underlying Event in this action."  (Doc. 17-1 at 1, 5). After review, the Court is satisfied that the Southern District of Alabama is an appropriate venue for resolution of the dispute between Joe Hand and a non-party alleged infringer. To the extent the Court's determination is incorrect,  Jackson's default status has resulted in waiver of venue. Hoffman v. Blaski, 363 U.S. 335, 343 (1960) ("A defendant, properly served with process by a court having subject matter jurisdiction, waives venue .... even simply by making default[]").

## II.   **Defaults and Default Judgments**

The Federal Rules of Civil Procedure establish a two-part process for obtaining a default judgment. Fed.R.Civ.P. 55. If "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). After default has been entered, if the "claim is for a sum certain or a sum that can be made certain by computation" the clerk must enter default judgment. Fed.R.Civ.P. 55(b)(1). In all other circumstances, such as here, "the party must apply to the court for a default judgment." Fed.R.Civ.P. 55(b)(2). As Joe Hand has secured a default against Jackson, the Court is only concerned with the default judgment against Jackson.

Whether to grant a default judgment is "discretionary" and is subject to review for abuse of discretion.  Owens v. Benton, 190 Fed. Appx. 762, 763 (11th Cir. 2006).  In the Eleventh Circuit

default judgments are disfavored. Surtain v. Hamlin Terrace Foundation, 789 F.3d 1239, 1244-1245 (11th Cir. 2015) (explaining that entry of a default judgment is warranted only if there is a sufficient basis in the pleadings for judgment to be entered -- "akin to that necessary to survive a motion to dismiss for failure to state a claim[]"); Gaffney v. Warden, Taylor Corr. Inst., 2022 WL 18381, *2 (11th Cir. Jan. 3, 2022) (per curiam) ("there is a 'strong policy of determining cases on their merits' and, therefore, 'default judgments are generally disfavored.' Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244–45 (11th Cir. 2015) (quoting In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003))[]").  "Courts prefer adjudication on the merits." Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada, 674 F.2d 1365, 1369 (11th Cir. 1982). "Entry of judgment by default is a drastic remedy which should be used only in extreme situations, as the court has available to it a wide range of lesser sanctions." Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985). There is a "strong preference that cases be heard on the merits" instead of imposing "sanctions that deprive a litigant of his day in court." Id.

Moreover, while "a default is not treated as an absolute confession by a defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact[;]" however, the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (per curiam) (citations and internal quotations omitted). This means that "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Id. (emphasis omitted). Thus, a plaintiff must establish a "prima facie liability case" against the defaulting

defendant. Pitts v. Seneca Sports, Inc., 321 F.Supp.2d 1353, 1357 (S.D. Ga. 2004) (citations omitted). And the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. *Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "[A]llegations relating to the amount of damages are not admitted by virtue of default ... the Court determines the amount and character of damages to be awarded." Miller v. Paradise of Port Richey, Inc., 75 F.Supp.2d 1342, 1346 (M.D. Fla. 1999).

Joe Hand moves for entry of a default judgment against Jackson due to his failure to plead or otherwise defend, and due to having obtained a Clerk's entry of default against him. In so doing, Joe Hand cites both Sections 605 and 553 of the Communications Act. Even if the facts established by the default are sufficient to establish liability under either, Joe Hand "may only recover under one section." Joe Hand Promotions, Inc. v. McBroom, 2009 WL 5031580, *2 (M.D. Ga. 2009). See also e.g., TKR Cable Co. v. Cable City Corp., 267 F.3d 196 (3d Cir.2001) (same); J&J Sports Prods., Inc. v. Blackwell, 2009 U.S. Dist. LEXIS 62240, *5 (M.D. Ala. July 21, 2009) (same). Joe Hand elects damages under Section 605. (Doc. 17-1 at 5). As such, the Court will assess Jackson's *prima facie* liability exclusively under 47 U.S.C. § 605. McBroom, 2009 WL 5031580 at *3.

## A.   <u>Threshold issues</u>

The Court is satisfied that Joe Hand has notified Jackson of the motion for entry of default judgment via placing a copy, as well as Joe Hand's Response, in the mail to Jackson at his address of record. (Doc. 17 at 3; Doc. 21 at 4). Additionally, the record confirms a Clerk's Rule 55(a) default was entered against Jackson for his failure to timely plead, answer, or otherwise defend. (Doc. 15). Moreover, there appears to be a sum which can be made certain or ascertainable, from which a default judgment can be entered without a hearing. Securities and Exchange Commn. v.

Smyth, 420 F.3d 1225, 1231-1232 (11th Cir. 2005) ("Judgment of default awarding cash damages could not properly be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation) (internal quotes and citations omitted). This is because Joe Hand seeks specific damages, *supra*. Further, Joe Hand alleges that Jackson is not an infant, incompetent person, or person in military service or otherwise exempted. (Doc. 17-2 (Decltn. Gamble)). Further, the Court is satisfied that it has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) as Joe Hand's claims "aris[e] under the … laws … of the United States" (47 U.S.C. § 553 and 47 U.S.C. § 605).  The Court is also satisfied that it has personal jurisdiction (amenability to jurisdiction/service of process) as Jackson is alleged to be a resident of Alabama and so is within the substantive reach of this forum's jurisdiction under applicable law, the alleged violations occurred in Mobile, AL, and service on Jackson has been established. Baragona v. Kuwait Gulf Link Transp. Co., 594 F.3d 852, 855 (11th Cir. 2010).

**B.**     ***Prima Facie* Liability**

As grounds for entry of a default judgment, Joe Hand points to the default against Jackson and argues that he has admitted all of the allegations in the Complaint due to same.  Jackson has thus admitted that he conducted business as Half Time Sports Bar and Grill, operated, maintained, and controlled the establishment located at 260 Azalea Road, Mobile, AL 36609, had a right and ability to supervise the activities of the establishment, and had an obvious and direct financial interest in the activities of the Establishment. (Doc. 1 at 1-2).  From this, Joe Hand argues Jackson's Section 605 liability and asserts there is nothing for the Court to determine, except damages:

> ... Jackson is directly liable for violating Plaintiff's rights under the Communications Act. Defendant Anthony Jackson was the sole owner of Half Time Sports Bar & Grill on the date of the Event. See Declaration of F. Page Gamble, Exhibit B. Further, by virtue of default, Defendant Anthony Jackson has

> admitted he conducted business as and operated, maintained and controlled Half Time Sports Bar & Grill on the date of the Event as well as had both the right and ability to supervise the infringing activities and a direct financial benefit from the infringing activities at the Establishment on the night of the Event ... Defendant Anthony Jackson is directly liable for the underlying Communications Act violation and should be held individually liable ...

(Doc. 17-1 at 12).  The Court cannot agree.

As stated *supra*, to prevail on a motion for default judgment the movant must establish a *prima facie* liability case against the non-movant. As to the merits and Joe Hand's burden, the Court may enter a default judgment if the well-pleaded factual allegations of fact of the complaint provide a sufficient legal basis for the alleged violations. Nishimatsu Const. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)[8] ("[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law[ ]"). Courts must "examine the sufficiency of plaintiff's allegations to determine whether the plaintiff is entitled to" a default judgment. Fidelity & Deposit Co. of Md. v. Williams, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

Section 605 prohibits any unauthorized person from "receiv[ing] or assist [ing] in receiving any interstate or foreign communication by radio and us[ing] such communication ... for his own benefit[.]" 47 U.S.C. § 605(a). Although § 605(a) explicitly refers only to "radio" communications, it is construed to encompass satellite TV transmissions.  DirecTV, Inc. v. Brown, 371 F.3d 814, 817 (11th Cir. 2004); DirectTV, Inc. v. Trawick, 359 F.Supp.2d 1204, 1207 n. 6 (M.D.Ala.2005); DirecTV, Inc. v. Schulien, 401 F.Supp.2d 906, 912-913 (N.D. Ill. 2005) ("The law is clear that digital satellite transmissions are covered...[]"). Section 605 explicitly provides a private right of action to "any person aggrieved by any violation of [47 U.S.C. § 605(a)]." § 605(e)(3)(A). Joe

---

8  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Hand Promotions, Inc. v. Glover, 2022 WL 898345, *2 (N.D. Ga. Mar. 28, 2022) (citing Section 605(e)). A number of courts within the Eleventh Circuit, including the SDAL, have held that Section 605 violations may include direct liability and/or vicarious liability claims. See, e.g., Joe Hand Promotions, Inc. v. Due South Food Servs., LLC, 2020 WL 2530306, *3 (S.D. Ala. May 18, 2020); Joe Hand Promotions, Inc. v. Neal, 2015 WL 4039076, *4-5 (S.D. Ala. Jul. 2, 2015); Joe Hand Promotions, Inc. v. Beech, 2015 WL 1825331, *4 (S.D. Ala. Apr. 22, 2015); Zuffa, LLC v. Al-Shaikh, 2011 WL 1539878, *6 (S.D. Ala. Apr. 21, 2011).   See also Joe Hand Promotions, Inc. v. Prestige Elite Lifestyle, LLC 2019 WL 11075705, *2 (S.D. Fla. Sept. 10, 2019), R&R adopted by 2019 WL 11075708 (S.D. Fla. Sept. 27, 2019) (same); J&J Sports Prod. Inc. v. Patel, 364 F.Supp.3d 1368, 1379 (S.D. Ga. 2018) (same); Joe Hand Promotions, Inc. v. Creative Ent., LLC, 978 F.Supp.2d 1236 (M.D. Fla. Oct. 15, 2013) ("[c]ourts in this circuit and this district have consistently analyzed the liability of individual defendants ... [versus] corporate owners ... differently. An individual defendant can be liable as the one who violated the statute, while a corporate owner can be liable under ... vicarious liability[]"); Joe Hand Promotions, Inc. v. Caddyshanks, LLC, 2013 WL 869527, *4 (M.D. Fla. Mar. 7, 2013) (same); Joe Hand Promotions, Inc. v. Sorota, 2012 WL 2414035, *2 (S.D. Fla. Jun. 26, 2012) (same).[9]

To establish a defendant's direct liability for a Section 605 violation, the plaintiff must establish that the defendant: 1) intercepted or received the program; 2) did not pay for the right to receive the transmission; and 3) displayed the program to patrons of his/her commercial establishment. Joe Hand Promotions, Inc. v. Prevot, 2019 WL 4694530, *2 (M.D. Fla. Sept. 26,

---

[9] However, not all courts within the Eleventh Circuit agree that vicarious liability exists under the Communications Act, as the Act itself is silent on the issue. Joe Hand Promotions, Inc. v. Creative Entertainment, LLC, 978 F.Supp.2d 1236, 1240-1241 (M.D. Fla. 2013) (recognizing the split).

2019) (citing Joe Hand Promotions, Inc. v. Martinez, 2019 WL 3082582, *3 (N.D. Ala. July 15, 2019); Joe Hand Promotions, Inc. v. Sports Nut, LLC, 2017 WL 6492546, *2 (N.D. Ala. Dec. 19, 2017); Joe Hand Promotions, Inc. v. ADJ Entity, LLC, 2011 WL 4102314, *2 (M.D. Ga. Sept. 14, 2011); Zuffa, LLC 2011 WL 1539878 at *4; J&J Sports Prod., Inc. v. Just Fam, LLC, 2010 WL 2640078, *2 (N.D. Ga. Jun. 28, 2010). "[W]illfulness under section 605 is [also] established by the fact that an event is broadcast without authorization."  Glover, 2022 WL 898345 at *3 (citing J&J Sports Prods., Inc. v. Space Millennium 2013, LLC, 2015 WL 13357907, *3 (N.D. Ga. Sept. 17, 2015); Joe Hand Promotions, Inc. v. Blanchard, 2010 WL 1838067,*4 (S.D. Ga. May 3, 2010)).[10] To establish an individual defendant's vicarious liability for a Section 605 violation -- in his individual capacity as an officer, director, shareholder and/or principal of an establishment -- the plaintiff must show the defendant had a "right and ability to supervise the violations, and that

---

10 Courts outside the Eleventh Circuit, as summarized in Joe Hand Promotions, Inc. v. Gonzalez, 2020 WL 4587445, *3 (E.D.N.Y. May 8, 2020), *R&R adopted by* 2020 WL 2781679 (E.D.N.Y. May 28, 2020), explain individual direct liability as "contributory infringement" (taken from copyright law) under Section 605 as:

> Establishing individual liability ... requires showing .... "contributory infringement," which arises when the individual "authorize[d] the violations," ....*J & J Sports Prods., Inc. v. Tellez*, 2011 WL 6371521, at *3 (E.D.N.Y. Dec. 20, 2011) (citing *J & J Sports Prods., Inc. v. LDG Williams, LLC*, 2011 WL 5402031, at *5–*6 (E.D.N.Y. Nov. 7, 2011)).

See also G&G Closed Circuit Events LLC v. Halstead, 2022 WL 2274546, *2 (D. Az. Mar. 4, 2022) (R&R) (same); Joe Hand Promotions, Inc. v. Batista, 2021 WL 3855315, *6 (S.D.N.Y. Jul. 23, 2021), *R&R adopted by* 2021 WL 3855311 (S.D.N.Y. Aug. 27, 2021) (same); J&J Prod., Inc. v. Circle R&R, Inc. 2019 WL 937348 at *2 n. 1 (S.D. Tex. Feb. 11, 2019), R&R adopted by 2019 WL 936522 (S.D. Tex. Feb. 26, 2019) (same); Joe Kingvision Pay–Per–View Ltd. v. Olivares, 2004 WL 744226, *5 (S.D.N.Y. Apr. 5, 2004) (R&R) (joint/several liability). For example, in the Eleventh Circuit, **"**[c]ontributory copyright infringement refers to the intentional inducement, causation or material contribution to another's infringing conduct[,] whereas "vicarious copyright infringement arises 'when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement.'" BUC Intl. Corp. v. International Yacht Council, Ltd., 489 F.3d 1129, 1138 at n. 19 (11th Cir. 2007). See also Cable/Home Communication Corp. v. Network Prod., Inc., 902 F.2d 829, 847 and 852 (11th Cir. 1990) (contributory infringement).

he had a strong financial interest in such activities." <u>Davis</u>, 2012 WL 1720892 at *2 (citing <u>Arboleda</u>, 2009 WL 3490859 at *5 (citing <u>J&J Sports Prod., Inc. v. Ribeiro</u>, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008) and <u>Sports Nut, LLC</u>, 2017 WL 6492546 at *2)). <u>See also</u> <u>J&J Sports Prod., Inc. v. Flame Bar and Grill, LLC</u>, 2018 WL 5283447, *2 (S.D. Ga. Oct. 24, 2018) (same). Case law addressing vicarious liability often note the claim's origins in the *United States Copyright Act*, 17 U.S.C. §§ 101 *et seq*., and because both apply the same standard -- supervision / financial benefit -- the finding that absent an actionable claim for direct infringement, claims for vicarious infringement must fail, may be similarly applicable to Section 605. <u>Greenspan v. Random House, Inc.</u>, 859 F. Supp. 2d 206, 218-219 (D. Mass. 2012).

To establish a Section 605 violation, the plaintiff must establish that the defendant: 1) intercepted or received the program; 2) did not pay for the right to receive the transmission; and 3) displayed the program to patrons of his commercial establishment. From a review of the allegations of the Complaint, Jackson's default means that he has admitted that on the night in question he or his agent: 1) "[b]y unauthorized satellite transmission or....receipt over a cable system, ...willfully intercepted or received the interstate communications of the Program or assisted in such actions[;]" 2) "chose not to contract with Plaintiff or pay a fee to obtain the proper license or authorization[;]" and 3) "unlawfully transmitted, divulged and published said communications, or assisted in unlawfully transmitting, divulging and publishing said communications to patrons in the Establishment[.]" (Doc. 1 at 3). The Complaint also alleges that: "[a]t the time of the wrongful conduct described herein, Defendant's agents, servants and employees were in fact Defendant's agents, servants and employees, and acting within the scope of their employment and authority as Defendant's agents, servants and employees." (<u>Id</u>. at 4).

In support of its motion, Joe Hand also submits the following screenshots of Facebook postings identified as being from the official Facebook page of the Half Time Sports Bar and Grill or from Jackson's personal Facebook page:

1) an advertisement (date unknown) posted *by someone* (unknown) stating that the Half Time Sports Bar and Grill would broadcast the program ("Saturday Night Fight Party!! on July 20 "live on pay-per-view[]" with a commercial Pay-Per-View image showing the fighters (Doc. 17-3 at 2);[11]

2) a July 20 posting *by someone* (unknown) stating "After the big fight party tonight it's the After party!! Flipside Saturdays! Bound to turn you up side down!!!!" above a commercial image for "Flip Mode Saturdays" showing information for a "Hase Productions" by "CEO Ent. Ron & Hase[] and provides telephone numbers for individuals named Hase and Ron, adding "A Product of VersusCompany.com[]" (Doc. 17-3 at 3);

3) a July 20 posting *by someone* (unknown) stating "[w]hile you watch one of the most anticipated fights of the year with us" enjoy steaks (Doc. 17-3 at 4);

4) a July 21 posting *by someone* (unknown) stating "What a night!!!! The fight and the after party was amazing! We will like to thank each and every one of you who decided to hang out for ultimate sprots bar experience![]" (Doc. 17-3 at 4); and

5) an undated personal Facebook post for Anthony Jackson which shows his image, a background image of a banner for Half Time Sports Bar and Grill, and that he self-identified as "CEO Anthony Jackson" and "Restaurant Owner at Half Time Sports Bar and Grill." (Doc. 17-4 at 2).

The record before the Court also establishes that on the night of July 20, 2019 someone on behalf of the Half Time Sports Bar and Grill commercial establishment intercepted the program (it was not licensed or authorized to do so), no one paid for the right to receive the transmission at this establishment (did not pay the commercial fees) and the program was displayed at this

---

11 Stating specifically:

Saturday Night Fight Party!! Boxing's only eight-division World Champion Manny Pacquiao meets fellow Welterweight World Champ Keith Thurman for WBA supremacy and a claim to the top spot in one of boxing's most talented divisions!!

establishment to patrons (35 to 75 patrons at different points in the evening). (Doc. 17-5 at 3-4 (Aff. Joe Hand); Doc. 17-7 (Aff. Molyneux)). Additionally, based on the record, the Court is satisfied that Half Time Sports Bar & Grill could not have obtained the transmission of the Event unless someone at the establishment undertook specific wrongful actions to intercept and/or receive and broadcast -- such as using an unauthorized decoder, obtaining cable service and illegally altering the cable service to bring the signal of the event into the commercial establishment or moving an unauthorized decoder from its authorized location to the commercial establishment. The Court is thus satisfied that Joe Hand is an aggrieved party under Section 605 because it had a proprietary interest in the intercepted communications (the event).

The Court is also satisfied that Joe Hand has established that Anthony Jackson is liable. First, Joe Hand has asserted that Anthony Jackson "conducted business as Half Time Sports Bar and Grill "and that he "operated, maintained and controlled" the establishment and had a financial interest in the establishment. (Doc. 1 at 1-2). Next, Joe Hand specifically asserts that Anthony Jackson "willfully intercepted or received the interstate communications of the Program or assisted in such actions." (Id. at 2). And then that Jackson "unlawfully transmitted, divulged and published said communications, or assisted in unlawfully transmitting, divulging and publishing said communications to patrons in the Establishment." Id. Furthermore that Jackson did so "[w]ithout authorization, license, or permission to do so from Plaintiff." Id. And to the extent that the Complaint alleges that others participated as agents, Jackson is held directly liable because the Complaint also alleges that the agents acted within the scope of their authority as agents of Jackson. These alleged facts are deemed proven on default.

Thus, because the Complaint's well-pleaded factual allegations are deemed admitted by

virtue of Jackson's default, and because such allegations are sufficient to state actionable claims under Section 605(a), the Court finds that Jackson is liable to Joe Hand. Thus, entry of default judgment pursuant to Rule 55 is appropriate against Jackson, given his failure to appear after service of process and the sufficiency of the well-pleaded factual allegations of the Complaint (all of which Jackson have now admitted) to establish his liability to Joe Hand.

## C.    **Damages & Attorneys' Fees/Costs**

Joe Hand seeks an award of 1) **statutory damages** under 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of **$6,374.25;** 2) **enhanced damages** for a willful violation under 47 U.S.C. § 605(e)(3)(C)(ii) in the amount of **$19,122.75;** 3) **attorneys' fees** per 47 U.S.C. § 605(e)(3)(B)(iii) in the amount of **$1,500.00**; 4) **costs** per 47 U.S.C. § 605(e)(3)(B)(iii) in the amount of **$502.00**. However, even in the default judgment context "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003). Indeed, a district court has an obligation "not to award damages that are uncertain or speculative." Natures Way Marine, LLC v. North Am. Materials, Inc., 2008 WL 1776946, *1 (S.D. Ala. Apr. 16, 2008).

At the outset, the Court finds that an evidentiary hearing is not necessary as Joe Hand has provided sufficient support for calculation of its damages (Declaration of attorney Page Gamble (Doc. 17-2 (Decltn. Gamble)), Affidavit of Joe Hand, Jr. (Doc. 17-5 (Aff. Hand)), Piracy Affidavit of Charles Molyneux (Doc. 17-7 (Aff. Molyneux)) and evidentiary filings (Docs. 17-3 to 17-4, 17-6 (Facebook postings and event rate card)). See, e.g., Frazier v. Absolute Collection Serv., Inc., 767 F.Supp.2d 1354, 1360 n.1 (N.D. Ga. 2011).

Pursuant to § 605(a), a plaintiff may elect between actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i); McBroom, 2009 WL 5031580 at *3. Here, Joe Hand has elected statutory damages. Under Section 605, Joe Hand may be awarded statutory damages and reasonable attorney's fees and costs. Additionally, if Joe Hand can show that Jackson's violation was willful, Joe Hand may also be awarded enhanced damages under the statute.

### 1.   Statutory Damages

Under § 605(e)(3)(C)(i)(II), a court can award between $1,000 and $10,000 per violation: "the party aggrieved may recover an award of statutory damages for each violation ... in a sum of not less than $1,000 or more than $10,000, as the court considers just."  Courts are given "wide latitude" in their discretion to determine the appropriate statutory amount. Cable/Home Comm. Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990) (citation omitted).

Joe Hand moves for statutory damages in the amount of **$6,374.25 --** "equal to the residential pay-per-view price ($74.99) multiplied by the number of patrons in the Establishment (75) totaling ($5,624.25) plus the Defendant's profits from the $10.00 cover charge issued to each patron ($750.00)." (Doc. 17-1 at 8-9). Joe Hand's request is based on the following:

> ... Defendant, or their agents, servants and/or employees intercepted and received or assisted in the interception and receipt of the live telecast of the Event to patrons at the Establishment for viewing therein. The unauthorized exhibition at the Establishment was advertised on the Establishment's official Facebook page. ...The patrons at the Establishment paid for meals, drinks and/or entertainment while viewing the Event. The patrons whom Defendant permitted without authorization to view the Event would otherwise only have been able to view the Event at a commercial establishment authorized by Plaintiff to receive the transmission. The Defendant broadcasted the Event to the patrons at the Establishment without paying any sublicense fees to Plaintiff. Plaintiff. To date, no amount has been paid to Plaintiff to compensate it for the illegal broadcast of the Event in the Establishment and there has been no attempt by Defendant to reach a settlement. Statutory damages are appropriate where actual damages are difficult to prove ...

19

.... it would be impossible to determine the full extent of profits lost by Plaintiff, loss of goodwill and the additional damages sustained by Plaintiff as a result of Defendant's unlawful actions ... awarding substantial statutory damages in this case serves to fully compensate the Plaintiff for its damages, deters future piracy, admonishes Defendant for ignoring this litigation, and encourages future defendants to participate in the litigation. In exercising such discretion, the court should also be mindful of the difficulty in detecting such violations and the widespread problem of piracy; as such the Court should grant damages in an amount which achieves the deterrent purposes of the statute. .... The unauthorized interception, receipt and broadcast of the Event and other closed-circuit programming threaten the viability of the closed circuit industry. There are no countervailing social or policy considerations which justify the unauthorized interception of these broadcasts....

... Plaintiff should receive additional compensation to account for any profits gained by Defendant from the increased proceeds coming from meals, drinks and/or entertainment as an indirect result of their unlawful actions. Moreover, as a result of theft by Defendant, Plaintiff has lost and will continue to lose as customers legitimate commercial establishments which are unwilling and financially unable to compete with those unauthorized commercial establishments, such as Defendant's, who steal programming that Plaintiff provides. Patrons, who visited Defendant's Establishment to see the Event, are patrons who did not go to authorized commercial establishments and spend their money at places that legally obtained the authorization to show the event. Those authorized commercial establishments cannot compete with the unfair and illegal competitive advantage that unauthorized establishments, like the Defendant's, unlawfully enjoy. Therefore authorized commercial establishments will be less likely to legally obtain the broadcast of future events that Plaintiff provides if illegal acts like the ones Defendant have committed are met with insignificant financial penalties. Plaintiff pays very substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's primary source of revenue is the sublicense fees which it charges authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Event. Illegal broadcasts of Plaintiff's programs such as the Event erode the base of Plaintiff customers and severely damage Plaintiff's ability to pay for the fees to obtain the right to sublicense future closed-circuit sports and entertainment programming.

... Plaintiff has suffered damage to its goodwill and reputation and loss of its right and ability to control and receive fees for the transmission of the Event. When negotiating sublicense fees, Plaintiff generally represents to legitimate commercial establishments the locations of other authorized commercial establishments licensed to receive the programming ... when an unauthorized commercial establishment intercepts, receives and broadcasts closed-circuit programming, such

as the Event, Plaintiff's reputation and goodwill suffers from what appears like a misrepresentation.

(Doc. 17 at 6-8).

"The Eleventh Circuit has not addressed a uniform formula for calculating damages under [S]ection 605." McBroom, 2009 WL 5031580 at *4. Most federal courts apply one of two methods: 1) a flat sum (J&J Sports Prods., Inc. v. Papiana, 2010 WL 1191807 (W.D. La. Mar. 26, 2010) (awarding the statutory maximum, $10,000, without setting forth any considerations or mathematical formula)); or 2) a per patron amount based on the number of patrons who were actually in the bar during the program (Garden City Boxing Club v. Rosado, 2005 WL 3018704, *3-4 (E.D.N.Y. Oct. 6, 2005) (R&R) (multiplying the number of patrons present for the unauthorized broadcasting by the $54.95 residential charge for the pay-per-view event shown)). *However*, courts within the Eleventh Circuit follow a third method -- the sublicense fee method -- typically ordering violating defendants to pay the sublicense fee based on the establishment's maximum capacity that it would have paid if it had legally purchased the program (McBroom, 2009 WL 5031580, at *4; Arboleda, 2009 WL 3490859, *6). As enunciated in Due South, 2020 WL 2530306 at *4: "courts in this Circuit have commonly fixed statutory damages in an amount commensurate with the license fee the establishment would have had to pay ... to air the Program lawfully ... The Court considers this methodology to be just and appropriate in this case[.]"

Joe Hand does not request the flat sum, the per patron, or the sublicense fee method for statutory damages.  Instead, Joe Hand requests **$6,374.25** based on the residential pay-per-view-price for the event multiplied by the final headcount of patrons observed in the establishment ($74.99/patron x 75 patrons) plus cover charge profits (75 patrons at $10 cover charge/per

21

patron).[12] The record indicates that the residential pay-per-view-price for the event was $74.99, the event was displayed on 13 televisions in a commercial establishment with a maximum capacity of 80-110 patrons, there were 35, 45, and 75 patrons in attendance at varying times during the event, the establishment promoted its broadcasting of the event in advance (presumably to attract

---

12 At the outset, while not assigning a specific sum to the amount, Joe Hand elects statutory damages but simultaneously argues entitlement to damages for lost profits, goodwill, business opportunities, the loss of legitimate commercial customers, etc. Additionally, Joe Hand argues that Jackson "realized increased proceeds that came from sales to patrons for meals, drinks and/or entertainment that came to the Establishment on July 20, 2019 to view the Event." (Doc. 17-1 at 11). However, this contention lacks merit as there is no evidence of any such proceeds. As explained in <u>Joe Hand Promotions, Inc. v. Jason Windham d/b/a Batter Up Sports Bar</u>, 2017 WL 5906037, *3 at n. 4 (S.D. Ala. Nov. 29, 2017):

> Curiously, even after electing statutory damages, Joe Hand's principal brief on summary judgment reels off a litany of purported actual damages, including lost licensing fees, loss of business opportunities and goodwill, loss of legitimate commercial establishments as customers because of unfair competition by entities that pirate satellite broadcasts, inability of legitimate establishments to recover sublicense fees because of unfair competition by those who offer stolen programming to their patrons for free, loss of customers to legitimate establishments because of advertising by unauthorized establishments, erosion of the base of potential patrons, loss of establishments as future customers of Joe Hand because of perceived misrepresentations by Joe Hand relating to locations of other entities licensed to broadcast an event, and so on ... Plaintiff having elected statutory damages in lieu of actual damages, any subsequent request for "additional compensation" spanning multiple categories of actual damages is denied as fundamentally incompatible with such election. Joe Hand cannot obtain both types of damages, and its election is binding. *See, e.g., Kingsvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp.2d 955, 958 (E.D. Wis. 2001) ("A party whose rights have been violated under § 605 can elect either actual damages or statutory damages.") ...

Similarly, here, Joe Hand elected statutory damages in lieu of actual damages. Yet, Joe Hand's proposed "method" seeks statutory damages while simultaneously seeking additional compensation covering "multiple categories of actual damages" (the "full extent of profits lost by Plaintiff, loss of goodwill," to "deter[] future piracy, admonish[] Defendant for ignoring this litigation, and encourage[] future defendants to participate in the litigation[]," "increased proceeds coming from meals, drinks and/or entertainment as an indirect result of their unlawful actions[,]" losing " legitimate commercial establishments which are unwilling and financially unable to compete with those unauthorized commercial establishments[]" "ero[ding] the base of Plaintiff customers and severely damage Plaintiff's ability to pay for the fees to obtain the right to sublicense future closed-circuit sports and entertainment programming[,]" "damage to its goodwill and reputation and loss of its right and ability to control and receive fees for the transmission[]" and "Plaintiff's reputation and goodwill [will] suffer[] from what appears like a misrepresentation." Such is disallowed as a matter of law. Joe Hand has elected statutory damages, meaning the foregoing actual damages are **DENIED** as such are not recoverable as "fundamentally incompatible with such election."

customers), and the establishment charged and collected a $10.00 cover charge to and from each patron in attendance. (Doc. 17-1 at 3, Doc. 17-2 (Decltn. Gamble)), screenshots of Facebook postings (Docs. 17-3 to 17-4), the Affidavit of Joe Hand, Jr. (Doc. 17-5 (Aff. Hand)), and the Piracy Affidavit of auditor Charles Molyneux (Doc. 17-7 (Aff. Molyneux)). The per patron method -- $74.99 residential fee multiplied by the highest number of patrons (75) amounts to $5,624.25 in statutory damages. The sublicense fee for the event for the establishment, with a maximum fire code occupancy of between 101-200 patrons, is $2,750.00. (Doc. 17-6; Doc. 17-5 at 2 (Aff. Hand); Doc. 17-7 (Decltn. Molyneux)). The cover charge profits are not known exactly because the investigator did not count a total of patrons from whom a cover charge was collected, but rather, the number of patrons at different times during the program's broadcast -- from 35, 45, to 75. At the least, 75 patrons paid the cover charge (but likely more), so Jackson could have reasonably made $750.00 in unknown cover charge profits because at least at one point 75 patrons were observed in the establishment while the program was being broadcasted.  Joe Hand Promotions, Inc. v. Mortimer, 2020 WL 2366738,*4 (M.D. Fla. Apr. 24, 2020), *R&R adopted by* 2020 WL 2330233 (M.D. Fla. May 11, 2020).

Applying the varying methods for statutory damages results in the following: the flat sum statutory maximum - $10,000; per patron $5,624.25 ($74.99 fee x 75 (highest number of patrons as there was not an "actual" fixed number); sublicense $2,750.00; and Joe Hand $6,374.25 (75 patrons x $74.99 fee plus $750 profits ($10 cover charge/per patron with 75 patrons)).  A review of caselaw within the Eleventh Circuit addressing Section 605 statutory damages reveals that the sublicense fee based on maximum capacity method is applied in most cases, including in one of the only two cases in the SDAL to calculate and award such fee (the other case applying the per

patron method Zuffa, LLC, 2011 WL 1539878 at *7).[13]  And Joe Hand has not provided the Court

with persuasive Eleventh Circuit case law meriting a departure from this method.  Thus, the Court

finds the sublicense fee method appropriate.

However, the Court considers that if it were to limit the award to recovery of only the

sublicense fee $2,750.00, such would not account for Jackson's cover charge profits from the

unauthorized broadcast of the program. Based on the particular facts of this case and the evidence

submitted, the Court finds that an additional award of $750.00, the requested cover charge profits

reflecting, per Joe Hand, the amount Jackson reasonably collected as the cover charge for 75

patrons, is also merited.  If the Court were to disregard the cover charge profits then "[a] bar owner

could violate 47 U.S.C. § 605(a), retain all profits and commercial advantage related thereto and,

---

13 See, e.g., Due South, 2020 WL 2530306 (awarding the sublicense fee as the Section 605 statutory damages).  See also e.g., Glover, 2022 WL 898345 at *4 (awarding the sublicense fee); Davis, 2021 WL 1720892 at *4 (same); Joe Hand Promotions, Inc. v. Johnny G's LLC, 2020 WL 7029302, *4 (M.D. Fla. Nov. 13, 2020), R&R adopted by 2020 WL 7024873 (M.D. Fla. Nov. 30, 2020) (same); G&G Closed Circuit Events, LLC v. IceBar Atlanta, LLC, 2020 WL 10142249, *3 (N.D. Ga. Nov. 10, 2020) (same); Joe Hand Promotions, Inc. v. Alburl, 2020 WL 4530609, *3 (N.D. Ala. Aug. 6, 2020) (same); Innovative Sports Mgt., Inc. v. Maldonado, 2020 WL 9460225, *5 (S.D. Fla. Jun. 26, 2020), R&R adopted by 2020 WL 9460218 (S.D. Fla. Jul. 13, 2020) (same); Joe Hand Promotions, Inc. v. Guevara, 2020 WL 3288029, *4 (M.D. Fla. Jun. 18, 2020) (same); Joe Hand Promotions, Inc. v. McGuire, 2019 WL 5285448, *4 (N.D. Ga. Jan. 8, 2019) (same); Joe Hand Promotions, Inc. v. Glory Days Ent., Inc., 2018 WL 3404065, *4 (M.D. Ala. Jun. 13, 2018) R&R adopted by 2018 WL 3393285 (M.D. Ala. Jul. 12 2018) (same); Joe Hand Promotions, Inc. v. Beck, 2016 WL 2742401, *3 (S.D. Ga. May 10, 2016) (same); J&J Sports Prod., Inc. v. Khin, 2016 WL 9046677, *4 (N.D. Ga. Mar. 31, 2016) (same); J&J Sports Prod., Inc. v. Baby Grand Piano Bar, LLC, 2016 WL 8902577, *5 (N.D. Ga. Mar. 31, 2016) (same); J&J Prod., Inc. v. Herbelaine, Inc., 2016 WL 9045967 (N.D. Ga. Feb. 8, 2016) (same); Joe Hand Promotions, Inc. v. Flynt, 2016 WL 93861, *3 (S.D. Ga. Jan. 7, 2016) (same); Space Millennium, 2015 WL 13357907 at *3 (same); Joe Hand Promotions, Inc. v. Fancy's Grill, LLC, 2014 WL 12537455 (N.D. Ga. Oct. 30, 2014) (same); Joe Hand Promotions, Inc. v. Chacko, 2013 WL 6190603, *4 (N.D. Ga. Nov. 25, 2013) (same); DirectV v. Stabile, 2012 WL 3037549, *4 (M.D. Fla. Jul. 3, 2012) (same); J&J Sports Prod., Inc. v. Pimentel, 2009 WL 10712652, *6 (M.D. Fla. Dec. 4, 2009), R&R adopted by 2009 WL 5171772 (M.D. Fla. Dec. 22, 2009) (same); ADJ Entity, LLC, 2011 WL 4102314 at *4 (same); McBroom, 2009 WL 5031580 at *4 (same); Arboleda, 2009 WL 3490859 at *7 (same); Kingvision Pay–Per–View Corp. v. El Torito Supermarket, Inc., 2007 WL 174158, *3 (M.D. Fla. June 19, 2007) (same); KingVision Pay Per View v. Thiaf, Inc., 2006 WL 2078427 (N.D. Ga. Jul. 24, 2006) (same).

only if subsequently caught by the provider, simply pay the .....sublicense fee at a later date. Such a result would not accomplish the intent of the statute because it would essentially incentivize parties to violate the statute by simply delaying the cost of the broadcast service. [Instead] [a] ....sum .... [that] would have the effect of recouping the sublicense fee ... and disgorging Defendants of any unknown profits gained from the Broadcast[] is appropriate. Joe Hand Promotions, Inc. v. Attia, 2016 WL 7015686, *4 (M.D. Fla. Aug. 25, 2016) (citation omitted), *R&R adopted by* 2016 WL 6996122 (M.D. Fla. Nov. 30, 2016).  See also Joe Hand Promotions, Inc. v. Wild Fish Nightclub, LLC, 2014 WL 12684525, *4 (M.D. Fla. Feb. 11, 2014), *R&R adopted by* 2014 WL 12684526 (M.D. Fla. Mar. 20, 2014) (awarding the sublicense fee per maximum capacity plus the cover charge profits); Prevot, 2019 WL 4694530 at *2 (same). As such, Joe Hand's motion for Section 605 statutory damages is **GRANTED in part** and **DENIED in part** as follows: damages are awarded in favor of Joe Hand and against Jackson in the amount of **$3,500.00** (the $2,750.00 sublicense fee plus the $750.00 cover charge profits for 75 patrons).

### 2.    Enhanced Damages for Willful Violation

Joe Hand moves for **$19,122.75** in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), three (3) times the statutory damages originally requested. As grounds, Joe Hand argues as follows:

> .... because of the absence of any way in which the Defendant could have "innocently" accessed the broadcast of the Event, it is apparent that they specifically and willfully acted to illegally intercept the transmissions of the Event for their own commercial advantage ... Defendant's actions indicate disregard of and indifference to the Statute. Furthermore, .... it was advertised .... that the Establishment would broadcast the Event ... demonstrating Defendant's willfulness. The Defendant knew that it was wrong to receive, intercept and broadcast the Event and to broadcast it in the Establishment. Similarly, the Defendant knew that their actions were unlawful, yet, with total disregard for the Statute, they nevertheless intercepted and received the transmission and broadcast it to the patrons of the Establishment.

... by virtue of default, Defendant has admitted that the illegal broadcast of the Event was committed for the direct or indirect commercial advantage or private financial gain. ... one of the main reasons Defendant showed the Event at their commercial establishment was to realize profits from meals, drinks and/or entertainment from paying patrons who came to watch the unauthorized broadcast of the Event. Without paying the sublicense fee, Defendant was able to broadcast the Event to their patrons for free and enjoy the proceeds from the evening of the Event without paying a financial investment.

Not paying the sublicense fee and illegally pirating the Event saved the Defendant from having to pay the fee that Plaintiff charged for the Event that is based on the occupancy of the commercial establishment. By not paying the requisite fee, before the Event even began, Defendant saw a profit of $2,750 (see Rate Card) over all of their legitimate competitors of similar size who did pay the sublicense fee. Defendant also charged patrons a $10.00 cover charge to enter the Establishment to view the Event. Additionally, the Defendant realized increased proceeds that came from sales to patrons for meals, drinks and/or entertainment that came to the Establishment on July 20, 2019 to view the Event.

(Doc. 17-1 at 10-11).

Section 605(e)(3)(C)(ii) provides that "in any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." "Willfulness may be inferred from the conduct required to intercept a broadcast without authorization." Zuffa, LLC v. Roldan, 2015 WL 12862924, *5 (M.D. Fla. Aug. 13, 2015), R&R adopted by 2015 WL 13793317 (M.D. Fla. Sept. 28, 2015). See also e.g., McBroom, 2009 WL 5031580 at *5 ("[c]ourts have found that willfulness under section 605 is "established by the fact that an event is broadcast without authorization[]"). This is because "[s]ignals do not descramble spontaneously[]" and are "unscrambled by some deliberate act." McBroom, 2009 WL 5031580 at *5; Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc., 77 F.Supp.2d 485, 490-4991 (S.D.N.Y.1999).  Thus, a defendant's unauthorized broadcast of program -- admitted to factually via default -- is enough to

support enhanced damages.  Id.  See also e.g., Arboleda, 2009 WL 3490859 at *5 ("[b]y virtue of default, the Defendants have admitted to exhibiting the Program in the Restaurant, a commercial establishment, willfully and for financial gain[]").

Once a violation of Section 605 is deemed willful, courts consider certain factors when deciding the amount of the enhanced damages award: 1) the number of violations by the defendant (i.e., repeated); 2) the defendant's unlawful monetary gains; 3) whether the defendant advertised for the event/broadcast; 4) whether the defendant collected a cover charge; and 5) a plaintiff's significant actual damages.  McBroom, 2009 WL 5031580 at *5; J&J Sports Prods., Inc. v. K. Christopher Edwards and Co., Inc., 2015 WL 13333576, *3 (N.D. Ga. Aug. 26, 2015). Courts also consider "the deterrent effect of the award, keeping in mind that the award should be substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)."  Blanchard, 2010 WL 1838067 at *4 (quotation omitted).  And "[c]ourts facing a similar fact pattern as in this case have awarded enhanced damages of three times what it would have cost Defendants to lawfully exhibit the Program."  McBroom, 2009 WL 5031580 at *5.  See, e.g., Kingvision Pay–Per–View Corp., Ltd. v. Wright, 2006 WL 4756450 (M.D. Fla. Oct. 27, 2006) (a multiple of three for enhanced damages was sufficient for a defendant's first known violation).  As noted in Al-Shaikh and AF, LLC, 2011 WL 1539878 at *9 "[c]ase law from district courts within the Eleventh Circuit indicate that for first time violators of Section 605(a), many courts under similar fact patterns have multiplied the amount of statutory damages awarded under Section 605(e)(3)(C)(i)(II) by three (3), to compute the amount of enhanced damages. See, e.g., Setanta Sports, 2010 WL 2432088 at *5–6; Wright, 2006 WL 4756450 at *3 n. 8; McBroom, 2009 WL 5031580, *6; Ribeiro, 562 F.Supp.2d at 502;

27

*Blanchard,* 2010 WL 1838067 at \*4–5. The Court is persuaded by this methodology." In sum, "[w]hile not bound by it, the Court finds this approach persuasive." McBroom, 2009 WL 5031580 at \*6.

The evidence of record supports the finding that Jackson -- who has admitted the well-pleaded factual allegations against him by his default but who appears to be a first time violator of Section 605 -- intercepted the program without authorization and broadcasted it to patrons at the Half Time Sports Bar and Grill establishment.  This is sufficient to show willfulness and the purposes of commercial advantage or financial gain, such that enhanced statutory damages may properly be awarded to Joe Hand. Jackson's default also establishes the willfulness and "commercial advantage or private financial gain" component of the statute. 47 U.S.C. § 605(e)(3)(C)(ii). While there is no evidence indicating Jackson was a repeated violator and actual damages are not asserted (only statutory), the well-pleaded factual allegations and evidence of record support the finding that he reasonably received some unlawful monetary gains, the unauthorized broadcast was advertised on Facebook, and the establishment charged a cover charge during the unauthorized broadcast.

Upon consideration, "the evidence indicates that the Defendants willfully violated Section 605 as there is no evidence indicating the program could have been accidentally intercepted and unscrambled. Additionally, upon the Clerk's entry of default, the Defendant[] w[as] deemed to have admitted the allegations that [he] ... exhibited the program willfully and for commercial gain. Moreover, the Court finds that an enhanced damage award would be a deterrent to help combat future instances of piracy. As such, enhanced damages are warranted under Section 605." Al-Shaikh and AF, LLC, 2011 WL 1539878 at \*9.  Thus, Joe Hand's motion for enhanced damages

28

is **GRANTED in part** and **DENIED in part** as follows: an award of enhanced damages using a multiplier of triple the statutory damages award is justified and appropriate such that enhanced damages in the amount of **$10,500.00** ($3,500.00 in statutory damages x 3) are awarded in favor of Joe Hand and against Jackson due to Jackson's willful violation of Section 605 in unlawfully intercepting and broadcasting the program. Al-Shaikh and AF, LLC, 2011 WL 1539878 at *9 (awarding 3x the statutory damages as enhanced damages and noting "[c]ase law from district courts within the Eleventh Circuit indicate that for first time violators of Section 605(a), many courts under similar fact patterns have multiplied the amount of statutory damages awarded under Section 605(e)(3)(C)(i)(II) by three (3), to compute the amount of enhanced damages ... The Court is persuaded by this methodology[]"); McBroom, 2009 WL 5031580 at *6 (awarding enhanced damages amounting to three times the statutory damages to "reflect[] the seriousness of Defendants' conduct, afford[] Plaintiff sufficient recovery based on the evidence submitted, and ... [to] provide a deterrent to future violations[]").

### 3.   Attorneys' Fees & Costs

Joe Hand moves for reasonable attorneys' fees incurred "attorneys representing" Joe Hand per 47 U.S.C. § 605(e)(3)(B)(iii) in the amount of **$1,500.00,** and costs per 47 U.S.C. § 605(e)(3)(B)(iii) in the amount of **$502.00**. (Doc. 17-1 at 13; Doc. 17-2 (at 1-2 Decltn. Gamble)). Per Section 605(e)(3)(B)(iii), the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." (emphasis added). "An 'award of attorneys' fees is mandatory, but the court must [still] determine a reasonable fee,' which is within its discretion. El Torito, 2007 WL 1794158, at *5.'" McBroom, 2009 WL 5031580 at 6. As stated

in Innovative Sports Mgt., Inc. v. Maldonado, 2020 WL 9460225, *5 (S.D. Fla. Jun. 26, 2020),

*R&R adopted by* 2020 WL 9460218 (S.D. Fla. Jul. 13, 2020):

> Under the "American Rule," litigants generally are not entitled to an award of attorney's fees for prevailing in litigation unless provided by statute or contract. *See, e.g.*, *In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005). Here, however, both the Communications Act and the Copyright Act provide for an award of "full costs," including reasonable attorney's fees to the prevailing party. *See* 47 U.S.C. § 605(e)(3)(B)(iii) (requiring the award of fees and costs to the prevailing party) and 17 U.S.C. § 505 (authorizing the award of fees and costs to the prevailing party). Accordingly, as the prevailing party by default final judgment, Plaintiff is entitled to an award of reasonable attorneys' fees and costs. *See, e.g., Arista,* 298 F. Supp. 2d at 1316 (noting that courts regularly award attorney's fees and costs upon default judgment in copyright infringement cases).

Additionally, as specified in Joe Hand Promotions, Inc. v. Guevara, 2020 WL 3288029, *5 (M.D.

Fla. Jun. 18, 2020):

> To calculate a reasonable award of attorney's fees, courts multiply the reasonable hourly rate by the reasonable hours expended. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34, ... (1983); *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). In determining the lodestar figure, a "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. ..., "market rate" means the hourly rate charged in the local legal market by an attorney with expertise in the area of law who is willing and able to take the case, if indeed such an attorney exists. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). The fee applicant bears the burden of establishing the requested rates are in line with the prevailing market rates by producing direct evidence of rates charged in similar circumstances or opinion evidence of reasonable rates. *Norman*, 836 F.2d at 1299. At a minimum, satisfactory evidence consists of more than the affidavit of the attorney performing the work; instead, "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.*

Further, "[t]he reasonable hourly rate is determined by the locality in which the case was filed[]

*Adams v. City of Montgomery*, 2013 WL 6065763, at *2 (M.D. Ala. Nov. 18, 2013)[,] and "[c]ourts

may consider citations to prior cases involving the same fee applicant, comparable attorneys, or

comparable litigation ...*Hansen v. Deercreek Plaza*, LLC, 420 F. Supp. 2d 1346, 1350 (S.D. Fla.

30

2006)." Joe Hand Promotions, Inc. v. Glory Days Ent., Inc., 2018 WL 3404065, *5 (M.D. Ala. Jun. 13, 2018) *R&R adopted by* 2018 WL 3393285 (M.D. Ala. Jul. 12 2018).

Because Jackson's liability has been established under Section 605, and Joe Hand is an aggrieved party due to its proprietary interest in the unlawfully intercepted broadcast program and has secured a default against Jackson, Joe Hand is entitled to reasonable attorney's fees and costs under 47 U.S.C. § 605(e)(3)(B)(iii). However, Joe Hand, as the fee applicant, bears the burden of establishing that the amounts requested are reasonable: "establishing the requested rates are in line with the prevailing market rates by producing direct evidence of rates charged in similar circumstances or opinion evidence of reasonable rates[]" and "satisfactory evidence consists of more than the affidavit of the attorney performing the work... [and must] necessarily must speak to rates actually billed and paid in similar lawsuits[.]" Guevera, 2020 WL 3288029 at *5.

### a.   Attorneys' Fees

According to Joe Hand's counsel Page Gamble (Gamble), Joe Hand incurred **$1,500.00** in **attorneys' fees** for the work of attorneys based on six (6) hours expended by attorneys at the **rate of $250/hour,** and a **$402.00 filing fee** and **$100.00 service of process fees** for this case.  (Doc. 17-2 (Decltn. Gamble at 1-2)).  Per Gamble, "the attorneys" billed six (6) hours of work at the rate of $250/hour which is asserted as reasonable for anti-piracy litigation considering his law firm's experience and other courts' regular approval of said rate.  (Doc. 17-2 (Decltn. Gamble at 1)). However, Joe Hand has not submitted the names of the attorneys who worked on this case, whether they are associates or partners, any attorneys' years of experience, any attorneys' timesheets, any details as to what the fees consist of, etc., or anything other than conclusory statements in Gamble's Declaration. Likewise, Joe Hand has submitted no documentation in support of its costs (invoices,

check stubs, process server documents, etc.) or explained why the process server incurred $100 in costs when the applicable statutory rate is $65.00 and/or entitlement to a higher rate.

While "[i]n making such determinations, the Court is an expert on the issues of the prevailing market's reasonable hourly rates for similar work and hours expended[]" Joe Hand Promotions, Inc. v. Rene, 2020 WL 3000195, *4 (M.D. Fla. Jan. 9, 2020), *R&R adopted by* 2020 WL 2999385 (M.D. Fla. Jan. 29, 2020), underlying documentation in support of an attorneys' fees request (billing statement/invoice) must establish the requested rates are in line with the prevailing market rates -- usually produced by the movant as direct evidence of rates charged in similar circumstances or opinion evidence of reasonable rates and which consists of more than the affidavit of the attorney performing the work and which speaks to rates actually billed and paid in similar lawsuits. Guevara, 2020 WL 3288029 at *5. Nevertheless, even without that documentation, the Court may rely on its own knowledge in determining whether the hourly rate and the number of hours expended on the matter were reasonable. Norman, 836 F.2d at 1303. Further, the undersigned may consider prior cases involving the same fee applicant, comparable attorneys, or comparable litigation. Glory Days Ent. Inc., 2018 WL 3404065 at *5.

The Court's review of the record indicates that attorneys' fees would have been incurred by attorneys in order to file the complaint, obtain the default, file the response to the Court's Order, and obtain a default judgment in this case. Joe Hand seeks to recover, for attorney Gamble, 6 hours of attorneys' fees incurred to draft and file these pleadings at the rate of $250/hour. This is precisely the fee (rate and hours) that Gamble sought in three (3) other Section 605 cases in federal courts in Alabama, and which was awarded, even with only his sparse Declaration submitted in support -- a Declaration that matches the one he submitted in this case. See Due South, 2020 WL

2530306 at *5 ("Plaintiff's evidence is that its attorneys expended a total of six hours on this litigation at an hourly rate of $250, for a total attorneys' fee of $1,500 ... both the hourly rate and the time expended are reasonable under the circumstances, and ... award plaintiff a reasonable attorneys' fee of $1,500.00[]"); <u>Glory Days Ent. Inc.,</u> 2018 WL 3404065 at *5-6 (awarding Gamble $250/hour as "Joe Hand Promotions has provided an affidavit from its counsel in which he states that six hours were spent on this litigation through the stage of preparation of a motion for default judgment ... he has 28 years of experience and his hourly rate is based on that experience and the approval by other courts of a $250 hourly rate, citing to other reported decisions[]"); <u>Sports Nut, LLC,</u> 2017 WL 6492546 at *5 ("Attorney F. Page Gamble's declaration states that 'attorneys representing [JHP] in this action reasonably expended or will expend a minimum of six (6) hours on this litigation through the preparation of [JHP's] Motion for Default Judgment.' .... In its discretion and experience, the Court finds that six hours of attorney labor, at a rate of $250 per hour, is a reasonable amount given the complexity and procedural posture of the case ... the Court awards JHP $1,500 in attorneys' fees...[]").

Moreover, $250/hour has been found to be a reasonable hourly rate for attorneys in Section 605 anti-piracy litigation in courts within the Eleventh Circuit. <u>See</u> <u>supra</u>. <u>See also</u> <u>e.g.,</u> <u>Glory Days Ent. Inc.,</u> 2018 WL 3404065 at *5 ([a]s noted by counsel in his affidavit, a federal district court in Alabama has found $250 to be a reasonable hourly rate for anti-piracy litigation by counsel for Plaintiff in this case. *See Sports Nut, LLC,* 2017 WL 6492546, at *5. The $250 rate is consistent with, and in fact lower than, the rate authorized in another case in this court in comparable litigation for an attorney with comparable experience. *See Adams,* 2013 WL 6065763, at *3 (stating "the Court has found the range of $300.00 to $375.00 applicable for attorneys with over 20 years of

experience') ... the $250 rate is reasonable[]"); <u>Mortimer</u>, 2020 WL 2366738 at *4 ("the requested

hourly rate ($250) ... for this type of work in the Orlando market are reasonable[]"); <u>Zuffa, LLC v.

Nguyen, MLN, LLC</u>, 2020 WL 6449316 (S.D. Fla. Jul. 27, 2020) (finding $270/hour reasonable

as incurred for a default judgment); <u>Rene</u>, 2020 WL 3000195 at *4 (finding, based on the court's

experience with similar cases and as an expert with prevailing market rates for similar work that

the rate of $250/hour was reasonable to secure a Section 605 default judgment); <u>Attia, 2016 WL

7015686 at *5</u> (finding that the rate of $250 an hour was reasonable in a <u>§ 605</u> violation case where

the defendants failed to appear, and the plaintiff moved for default judgment); <u>Wild Fish

Nightclub, LLC</u>, 2014 WL 12684525 at *5 ($250/hour "is well within the range of reasonable

hourly rates charged for this type legal work in this market[] for a Section 605 default judgment).

Further, for Section 605 cases within the Eleventh Circuit, 6 hours of attorney work has

been found reasonable to obtain default judgments. <u>See</u>, <u>e.g.</u>, <u>Due South</u>, 2020 WL 2530306 at *5

("Plaintiff's evidence is that its attorneys expended a total of six hours on this litigation ... the time

expended ... [is] reasonable under the circumstances[]"); <u>Mortimer</u>, 2020 WL 2366738 at *5

(finding six hours worked for a Section 605 default judgment was reasonable); <u>Rene</u>, 2020 WL

3000195 at *4 (finding, based on the court's experience with similar cases and as an expert with

prevailing market rates for similar work and hours expended, that six hours was reasonable to

secure a Section 605 default judgment); <u>Sports Nut, LLC, 2017 WL 6492546, at *5</u> ("[i]n its

discretion and experience, the Court finds that six hours of attorney labor ... is a reasonable amount

given the complexity and procedural posture of the case[]"); <u>Guevara</u>, 2020 WL 3288029 at *5

("Plaintiff's counsel submitted an affidavit stating ... he spent approximately six hours on this

litigation. ... six hours have been found to be a reasonable amount of time to expend on a

Communications Act case in which the defendant did not appear...."); Attia, 2016 WL 7015686 at *5 (finding that six hours of work was reasonable in a § 605 violation case where the defendants failed to appear, and the plaintiff moved for default judgment); Joe Hand Promotions, Inc. v. Beck, 2016 WL 2743401, *4 (S.D. Ga. May 10, 2016) (finding 6. 7 hours expended litigating the Section 605 default judgment was reasonable); Wild Fish Nightclub, 2014 WL 12684525 at *5 (6 hours expended in a Section 605 default judgment action appears reasonable).

Thus, Joe Hand's motion for attorneys' fees is **GRANTED** and **$1,500.00** in **attorneys' fees** are awarded for six (6) hours expended by attorneys at the rate of $250/hour.

**b.** **Costs**

Joe Hand moves for recovery of **$502.00 in costs** -- $402.00 for the Complaint filing fee and $100.00 for service of process fees on Jackson.  Joe Hand's motion for costs is **GRANTED in part** and **DENIED in part.**

Rule 54 provides that costs should be allowed to the prevailing party. Fed. R. Civ. P. 54(d). Moreover, per the Communications Act Section 605(e)(3)(B)(iii), the Court "shall direct the recovery of full costs .... to an aggrieved party who prevails." (emphasis added). Absent contractual or statutory authority, the items that may be taxed as costs are limited to those listed in 28 U.S.C. § 1920 including fees of the clerk/marshal, 28 U.S.C. § 1920(1). The Court has discretion to award those costs specifically enumerated in 28 U.S.C. § 1920, but the Court may not tax as costs anything not authorized by the statute. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987). Nevertheless, "[c]ourts have held that the term 'full costs' as used in section 605 includes a broader category of costs than are generally taxable in civil cases pursuant to 28 U.S.C.

§ 1920. *See, e.g., Joe Hand Promotions, Inc. v. SNP Hookah Lounge & Grill LLC ...* 2019 WL 3500854, at *5 (S.D. Tex. July 31, 2019)." Nguyen, MLN, LLC, 2020 WL 6449316 at *4 at n. 6.

While Joe Hand has failed to submitted documentation in support of these costs (no invoices, check stubs, etc.), the Court is familiar with the fees associated with filing a Complaint in this District and for service of process. Pursuant to 28 U.S.C. § 1920(1), Joe Hand's **$402.00** for filing the Complaint is recoverable. Maldonado, 2020 WL 9460225 at *9 (same); Attia, 2016 WL 7015686 at *5 (same).  And while 28 U.S.C. § 1920(1) also permits the Court to award fees for private process fees, such is permitted so long as they do not exceed the fees permitted by the statute -- namely, fees charged by the United States Marshals Service for personal service of process which are currently $65/hour per 28 U.S.C. § 0.114(a)(3). EEOC v. W&O, Inc., 213 F.3d 600, 623-624 (11th Cir. 2000) (holding that private service fees are compensable under section 1920 but should not exceed the Marshal's fee); Maldonado, 2020 WL 9460225 at *9 (denying plaintiff's request for $475 in process server fees as excessive and only awarding $65 per defendant, because such exceeded the fees charged by the Marshal and the summary invoice plaintiff provided failed to specify the hours required to serve defendants or otherwise explain the reason for such costly service); Zuffa, LLC v. Roldan, 2015 WL 12862924, *11 (M.D. Fla. Aug. 13, 2015), *R&R adopted by* 2015 WL 13793317 (M.D. Fla. Sept. 28, 2015) (awarding only $65 for service of process).  The requested process server fee of $100 exceeds this amount.  Joe Hand submitted no invoice.  Joe Hand also does not specify the hours required to serve Jackson or otherwise explain why the amount sought exceeds $65.00. As such, Joe Hand is only awarded **$65.00** for service of process upon Jackson.

III.   **Conclusion**

      Based upon the foregoing and as detailed *supra*, it is **ORDERED** that Joe Hand's motion for entry of default judgment (Doc. 17) against Jackson is **GRANTED in part** and **DENIED in part** and damages in the amount of **$15,967.00** are awarded in favor of Joe Hand as follows:

      1) A Default Judgment is entered in favor of Joe Hand and against Jackson;

      2) Section 605(a)(3)(C)(i)(II) statutory damages in the amount of **$3,500.00** are awarded in favor of Joe Hand and against Jackson;

      3) Section 605(a)(3)(C)(ii) enhanced damages in the amount of **$10,500.00** are awarded in favor of Joe Hand and against Jackson; and

      4) Attorneys' Fees and Costs in the amount of **$1,967.00** are awarded in favor of Joe Hand and against Jackson ($1,500.00 in fees and $467.00 in costs).

      The Court also awards Joe Hand post-judgment interest to accrue at the federal rate calculated pursuant to 28 U.S.C. § 1961(a) from the date of the entry of the judgment.

      **DONE** and **ORDERED** this the **4th** day of **August 2022.**

          /s/ Kristi K. DuBose
          **KRISTI K. DuBOSE**
          **UNITED STATES DISTRICT JUDGE**